Filed 2/25/13  In re K.R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.R. et al., Persons Coming Under the Juvenile Court Law. | B240392 (Los Angeles County Super. Ct. Nos. CK91747, J957218) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CHRISTINE B. et al., Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County. Elizabeth Kim, Juvenile Court Referee.  Affirmed.

Grace E. Clark, under appointment by the Court of Appeal, for Defendant and Appellant Christine B.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Pablo R.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Christine M. (Mother) and Pablo R. (Father) appeal the dependency court's dispositional orders. They contend that the trial court should have ordered their respective children returned to their care. We find the parents' contentions unavailing, and affirm.

## FACTS

This matter originally came to the attention of the Department of Children and Family Services (DCFS) in August 2011. On the evening of August 9, Father phoned the local police station to report that he was a victim of domestic violence by Mother. The officer traveled to the home, where Father reported that he and Mother had argued about locking the door to their apartment. Mother had left their apartment and, when she returned, she found the door locked. This angered her so much that she threw her keys at Father. Jasmine R., Father's daughter—who is not related to Mother and who was 11 years old at the time—picked up the keys, which angered Mother even further. Father intervened, and Mother punched him on the backside of his head. Father decided to go into another room in an attempt to defuse the situation. Mother followed him and, while he was holding their one-month-old daughter, K.R., Mother scratched the right side of his face.

The police officer reported that Jasmine agreed with her Father about what occurred. However, Jasmine stated that she felt safe in the home and was not scared of Mother. Mother did not deny Father's statement, except for the scratch to the face. She displayed symptoms of intoxication and admitted to having consumed two 40-ounce bottles of malt liquor. She further admitted to being an alcoholic and that alcohol affects her behavior negatively. Mother was arrested and a temporary restraining order was issued against her.

A week later, a caseworker visited the family to discuss the incident. Mother admitted that she threw keys at Father and scratched his face. Father stated that their arguments generally occurred when Mother was drinking. Jasmine stated that Father and Mother argued frequently and that their arguments would sometimes become violent, but she denied ever being hit by Mother or Father.

On August 29, 2011, DCFS received a second referral for the family. Jasmine reported to the caseworker that the day before, Mother drank four 40-ounce beers and argued with Father. Mother tried to hit Father, who pushed her away, but Mother kept trying to hit him. Mother then kicked the radio and broke the TV stand. Later that evening, Mother threw a mug full of milk at the wall. Then, when Jasmine was in her room trying to sleep, she heard Mother and Father arguing again. When Jasmine entered the room, she saw Mother and Father wrestling. She called the police.

Jasmine told the caseworker that when Mother drinks she hits Father, but she is fine when she is not drinking. Father admitted that the August 29 incident occurred and stated that Mother began hitting him while he was holding the baby, K.R. Mother also admitted to the allegations, but stated she drank only three 40-ounce bottles of beer, not four. She acknowledged that she was in violation of the restraining order. The children were detained and a voluntary family maintenance program was initiated.

A caseworker's report from October 2011 noted that Mother had moved out of Father's residence. Mother expressed interest in moving back in with Father, but the caseworker advised against it given their prior history. Father also wanted Mother to move back in to help with expenses. A few weeks later, Mother moved back into the residence.

In November 2011, Father left two messages with the caseworker. The first one stated that Mother would be moving out of the home. The second one was a voicemail message in which the caseworker could hear Mother and Father arguing and Father telling Mother to get out of his home.

In January 2012, Father tested positive for cocaine and marijuana. Father stated that he used medical marijuana for health issues. He produced a medical marijuana card that had expired in 2010. He claimed that the positive test for cocaine may have been the result of prescription pain medication. The caseworker phoned the testing center to inquire about the possibility of a false positive for cocaine and was informed that Father's pain medication would not create a positive for cocaine.

Mother was very upset about Father's positive cocaine test. She stated that she was willing to move out of Father's home and go to a shelter if that would help her get K.R. back. The caseworker told her that the child could not be released to her so long as she lived with Father.

On February 7, 2012, DCFS filed two section 300[1] petitions, one pertaining to K.R., the other to Jasmine.[2] Pursuant to section 300, subdivisions (a) and (b), both petitions alleged that Father and Mother engaged in violent altercations in the presence of the children, endangering their health and safety and placing them at risk of suffering physical harm. The petitions also alleged, pursuant to section 300, subdivision (b), that Mother was an abuser of alcohol, which rendered her incapable of providing regular care for her child and which created a detrimental home environment, and that Father was a user of illicit drugs, which rendered him incapable of providing regular care. The dependency court ordered the children detained.

In February 2012, Jasmine was interviewed by a caseworker. She said that when Mother began living with them in September 2010, she would drink a 40-ounce beer every day. Mother tried to take care of K.R. while she was drunk. The fights between Mother and Father would always occur because of Mother's drinking. Jasmine had seen Mother initiate physical fights with Father at least seven times. Jasmine said that she had never seen Father drink alcohol. She knew that Father smoked marijuana "because of his bad hip," but said he had never smoked in her presence. Jasmine stated that she wanted to go back home and live with Father, but was afraid of living with Mother.

When Father was interviewed, he said that he and Mother had altercations "maybe twice." Mother was always the aggressor. Father stated that he had rheumatoid

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

[2] This is a consolidated appeal from two separate dependency cases, No. CK91747 (regarding K.R.) and No. J957218 (regarding Jasmine). Father is a party to both cases. Mother is a party only to case No. CK91747.

arthritis/degenerative hip, and that he decided to try marijuana for the pain instead of the opiates prescribed by his doctor, because he was wary of their addictive properties. He said he received his first medical marijuana prescription in 2009 or 2010, that he smokes marijuana at least two to three times a day, and that he never smokes in the home. His medical marijuana prescription was current. He claimed that Mother never drank alcohol in the home. He said that he had never used cocaine.

Mother stated that she did not drink on a daily basis and that she only drank beer, not hard alcohol. She said that she had never been drunk in the presence of the children. She stated that she and Father had lived together for about one and a half years, but they were not presently in a relationship. Her plan was to move out and go to a shelter, but Father did not want her to go because she paid for rent.

On February 24, 2012, Mother left a voicemail with the caseworker stating that she had caught Father using crack cocaine and that he had hit her twice. When contacted the next day, she said that she had not seen Father using drugs, but had called and left the message because he had pushed her twice and she was upset with him and wanted him to leave her alone. Mother stated that she had thrown the dinner she prepared all over the kitchen, and that their argument got so loud that the apartment manager threatened to call the police.

A few days later, Mother called the caseworker to inform her that she planned on moving to her stepfather's house in Desert Hot Springs. About a week later, Mother called again and said that she had moved to the house in Desert Hot Springs, but then moved back to Los Angeles because the house was filthy and smelled like cat urine. She was currently residing in a shelter.

On March 27, 2012, the day before the jurisdiction and disposition hearing, Mother found housing at a transitional shelter. The manager reported to the caseworker that Mother could stay at the residence for as long as she needed, and that K.R. could stay at the residence too. Mother had her own furnished room with a twin bed and a crib. The monthly rent was $525, but as Mother made only $516 per month, the manager had agreed to work around her income so that she would have money for food.

5

At the hearing, the dependency court found both section 300 petitions true as alleged. The court ordered Mother to participate in a parenting course, domestic violence counseling, individual counseling, and an alcohol program with random testing. Father was ordered to attend a parenting course, domestic violence counseling, couple's counseling (if appropriate), individual counseling, and drug rehabilitation with random testing.

## DISCUSSION

Father and Mother both contend that there was insufficient evidence to support the trial court's dispositional orders removing their respective children from their custody.

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.) A court abuses its broad discretion when it makes a determination that is arbitrary, capricious, or patently absurd. (*In re Mark V.* (1986) 177 Cal.App.3d 754, 759.) The reviewing court should defer to the trial court and interfere only if it finds that "'"under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did."'" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Pursuant to section 361, subdivision (c)(1), a juvenile court may not remove a child from parental custody unless "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." And, although this finding must be made by clear and convincing evidence, on appeal "'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.'" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881.)

6

## I. Mother's Appeal

Mother contends that K.R. should have been returned to her custody at the time of the dispositional hearing. She argues that, during the voluntary family maintenance period and up through the dispositional hearing, she was diligent in attending classes recommended by DCFS and visiting with K.R. She had completed 12 weeks of substance abuse, anger management/domestic violence, and parenting classes as of January 2012. Further, she had recently found a new residence suitable for both her and K.R.

We find that the continued removal of K.R. was not improper. A dependency court may consider both the past and the present conduct of a parent in fashioning a dispositional order. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) A dispositional order that took into account Mother's violent behavior was not unwarranted. According to the parties' statements, Mother was the primary perpetrator of domestic violence in her relationship with Father. Although altercations occurred near the beginning of the voluntary family maintenance period, the destructive behavior continued nearly up until the time of the dispositional hearing. As recently as February 24, 2012, Mother had (apparently falsely) accused Father of using crack cocaine, she threw dinner all over the kitchen, and she argued with Father so loudly that the apartment manager threatened to call the police.

A long line of cases has held that domestic violence harms children. "'Both common sense and expert opinion . . . indicate spousal abuse is detrimental to children.'" (*In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562, citing *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5.) The dependency court need not wait until a child suffers actual physical harm before taking appropriate action. "It is clear to this court that domestic violence in the same household where children are living *is* neglect; it is a failure to protect [children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it. Such neglect *causes* the risk." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194; see also *In re Basilio T.* (1992) 4 Cal.App.4th 155, 168-169.)

Mother's violent behavior toward Father presented a substantial risk to K.R. K.R., a baby, was witness to loud and abusive behavior. Furthermore, during one of her parents' fights, while she was being held by Father, Mother scratched Father's face. The evidence supported the position that K.R. was negatively affected by the domestic violence and would continue to be at risk if immediately returned to Mother's custody. *In re Henry V.* (2004) 119 Cal.App.4th 522, a case cited by Mother, is distinguishable. The appellate court in that case noted that the child's exposure to violence was a "single occurrence." (*Id.* at p. 529.) In contrast, during her short lifetime, K.R. had been exposed to numerous incidents of violence. Furthermore, the record in *In re Henry V.* was absent "of any indication on the record that either the court or the Agency understood the necessity of making the dispositional findings on clear and convincing evidence." (*Id.* at p. 530.) That was not the case here. The dependency court here expressly found by clear and convincing evidence that there would be substantial danger to K.R.'s physical health, safety, protection, or physical or emotional well-being if she were returned to Mother.

Although Mother appeared motivated to improve her living situation by moving into the shelter with facilities suitable for K.R., this move occurred only one day before the dispositional hearing. It was not error for the dependency court to require a further demonstration of Mother's commitment to a violence-free and alcohol-free lifestyle. Therefore, the dispositional order removing K.R. from Mother's custody will not be reversed.

## II. Father's Appeal

Father contends that the dispositional order removing Jasmine and K.R. from his custody was improper. His appeal focuses on the assertion that the children were ordered removed from his care solely because he repeatedly tested positive for marijuana. Nothing in the record supports such an assertion, however. After Father tested positive for both marijuana and cocaine, the dependency court ordered him to complete drug rehabilitation with random testing and ordered that visitation could not occur if he was

8

under the influence of drugs or alcohol, but the court did not condition the children's return on his testing clean for medically prescribed marijuana.

Father's brief largely fails to acknowledge that his refusal to separate from Mother was a precipitating reason his children experienced domestic violence. "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, overruled on other grounds *in Renee J. v. Superior Court* (2001) 26 Cal. 4th 735.) Both Mother and Father acknowledged that they had a volatile relationship and that domestic violence occurred when Mother drank alcohol. Despite this, Mother and Father continued to live with each other well past the time this dependency matter was initiated. Indeed, Father stated that he wanted Mother to stay in his home to help pay for rent.

Father was not blameless in creating the harmful situation. In late February 2012, Mother informed the caseworker that Father had pushed her twice. Mother also stated that Father would frequently start arguments with her. A home environment where domestic violence frequently occurs poses a substantial risk to the physical and emotional well-being of a child. Father never demonstrated the ability to provide his children with a safe home. Therefore, we cannot say that the dependency court erred in ordering the continued removal of Father's children from his custody.

## DISPOSITION

The dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

9