Filed 6/24/13  In re B.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.B. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>B.D.,<br><br>        Defendant and Appellant. | E056965<br><br>(Super.Ct.No. RIJ1200521)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant B.D. (Mother) appeals from the juvenile court's dispositional orders as to her two children, 11-month-old N.E. (N.) and six-year-old B.B (B.). Mother's sole contention on appeal is that there was insufficient evidence to support the juvenile court's disposition order. We reject this contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Riverside County Department of Public Social Services (DPSS) in May 2012 when then eight-month-old N. was taken to the hospital in an ambulance. N.'s X-rays showed that he suffered a spiral fracture on his left arm and a skull fracture. Mother reported that the injury occurred when she was not home and had left N. and his five-year-old sister B. in the care of her live-in boyfriend while she went out to get food.[1] Mother's boyfriend reported that N. was fussy and that when he lifted him up, he did not have a good grasp on N. and N. fell about two feet, causing the injuries.

The initial trauma treating physician noted that N.'s injuries were "pretty significant" and unlikely to be caused from a two foot drop. The doctor had concerns of child abuse based on the severity of N.'s injuries. A CAN Team physician indicated that N.'s injuries were "not consistent with the incident described by [Mother and her boyfriend]" and believed N.'s injuries occurred at different times. Mother denied any

[1] Mother and her boyfriend R.B. had been living together since December 2011.

child abuse, and insisted the injuries were caused because her boyfriend was "'careless.'" Due to the severity of N.'s injuries and the forensic findings, DPSS determined the children would need to be placed in protective custody.

The children have different fathers. Mother insisted that the children's fathers were not active in their children's lives. She claimed that N.'s father abandoned her when she was five months pregnant with N., but it was later discovered that N.'s father was a United States Marine deployed overseas. Mother also asserted that she had a restraining order against B.'s father, but upon further investigation, the social worker determined that B. resided with her father and paternal grandmother about four days a week and that B.'s father was actively involved in B.'s life. B.'s paternal grandmother disclosed that "the only time [B.] is away from her father for more than a couple days is when [Mother] is mad and often uses B. as a weapon." B.'s paternal grandmother further noted that Mother had filed for a restraining order against B.'s father when they were 16 years old and that the order had not been in effect for many years. The social worker recommended that B. be detained from Mother and placed in B.'s father's care with family law orders providing him sole physical and legal custody.

Mother had a prior child welfare referral involving allegations of physical abuse and general neglect of B., which was unfounded. In that referral, it was reported that Mother had physically abused then two-year-old B. when she slapped B. in the buttocks with an open hand. Law enforcement concluded the child's buttock was "'slightly red'" but not "'serious enough to take action.'" At that time, B. disclosed being "'hit'" on a regular basis but denied any injuries.

3

On May 24, 2012, a petition was filed on behalf of the children pursuant to Welfare and Institutions Code[2] section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (e) (severe physical abuse (child under five)), (g) (no provisions for support), and (j) (abuse of sibling).[3]  At the detention hearing, B. was formally removed from Mother's custody, and detained with her father.  N. was formally removed from parental custody and placed in protective custody pending approval of relative placement.

N. was eventually placed with his maternal great grandparents.  N.'s father was in active duty in the military with two additional deployments due, but had continued to provide $2,600 a month in financial support and medical insurance to Mother and N.  N.'s father was content in having his child remain in the care of the maternal great grandparents, and had desired to have N. in his care when it was available.  The maternal great grandparents had indicated they would provide temporary guardianship of N. until his father's position in the military allowed him to have stability and structure so as to provide a stable home for his child.

In a jurisdictional/dispositional report, the social worker recommended that the allegations in the petition be found true as amended and that the children be removed from Mother's custody.  The social worker noted that Mother had minimized the possibility of abuse by her boyfriend and failed to recognize the severity of N.'s injuries.

---

[2]  All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3]  The petition was later amended on June 20, 2012, to amend allegations regarding N.'s father, remove the subdivision (g) allegation of no provision for support by N.'s father, and include an appropriate pronoun in the subdivision (e)-1 allegation.

Mother had continued to have a relationship with her boyfriend and had continued to maintain that there was no evidence her child was abused. The social worker concluded that Mother had failed to recognize her responsibility as a custodial parent for her child in the absence of N.'s father, while he was deployed. Mother had also failed "to understand her responsibility to provide adequate and appropriate supervision for her children at all times, even in her absence."

The jurisdictional/dispositional hearing was held on August 14, 2012. At that time, N.'s father requested custody of his child with family law orders. Counsel pointed out that N.'s father was living in Orange County, had changed his "method of service," was now "nondeployable," and the military would work with his schedule so he could care for his son and his son's special medical needs as a result of the injuries. Mother's counsel requested that the case remain open with Mother being provided with reunification services. Counsel noted that Mother was compliant with her case plan—she was attending individual counseling, parenting and domestic violence classes, and regularly visiting her children. Counsel also asserted that Mother was no longer in a relationship or in communication with the boyfriend; that she was working and supporting herself; and that N. should remain with his maternal great grandparents since N.'s father had no relationship with N.

The juvenile court found allegations a-1, b-1, e-1, and j-1 in the amended petition true and allegations b-2 and b-3 not true. The children were declared dependents of the court and removed from Mother's custody. In regard to B., sole legal and physical custody was given to her father with Mother having supervised visitation. In regard to

5

N., legal custody was granted to both parents and sole physical custody to N.'s father with supervised visitations for Mother. This appeal followed.

II

DISCUSSION

Mother contends the juvenile court erred in removing the children from her custody because there was insufficient evidence to show that the children would be in substantial danger if returned to her care, and there were reasonable means available to protect the children without removing them from her care. We disagree.

In dependency proceedings, if a child is not returned to the original custodial parent's home at the dispositional phase, section 361, subdivision (c)(1), as relevant here, requires the juvenile court to find, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the" child if he or she were returned home, and "there are no reasonable means by which" to protect the child absent removal from the parent's physical custody. (See also *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288.) Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 694-695.) Clear and convincing evidence is required in order to protect the parents' constitutional rights to the care, custody and management of their children. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529.)

"The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the

child.  [Citations.]"  (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, overruled on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.)  The court may consider past events in determining whether there is a danger to the child, and need not wait until the child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 165 [where parent had not grasped danger of incident in which parent almost ran over child's foot while driving, and was in denial regarding reported incidents of physical abuse, substantial evidence supported juvenile court's decision to remove child from parent's custody].)

While the juvenile court must find clear and convincing evidence, we determine whether substantial evidence supports the juvenile court's conclusion.  (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462-463; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

Mother argues that by the time of the disposition hearing, the issues leading to the initial detention of the children had been addressed, and the risks to them ameliorated.  She points out that N. was harmed by her "companion during a brief period of time that [she] left the child in his care," and since then she had ended her relationship with that person.  In addition, she claims she was proactive in visiting the children on a daily basis and she had participated in individual counseling, parenting education, and domestic violence classes.

The juvenile court weighed these facts against the social worker's report that Mother failed to recognize the severity of N.'s injuries and lacked insight into the degree

7

of her own responsibility for N.'s injuries. In addition, the record does not support Mother's claim that N. was injured "during a brief period of time that [she] left the child" in her ex-boyfriend's care. Forensic evidence showed that N.'s injuries resulted at different times and were not caused from being dropped from a distance of about two feet. The physicians suspected N.'s injuries were nonaccidental and resulted from physical abuse. Moreover, since jurisdiction had been established pursuant to section 300, subdivision (e), prima facie evidence showed that N. could not safely be returned to Mother's care. (§ 361, subd. (c)(1) ["The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury"].) In short, there is substantial evidence to support the juvenile court in finding clear and convincing evidence that the children would be in substantial danger if returned to her care.

There is also substantial evidence to support the juvenile court's finding that there were no reasonable means available to protect the children without removing them from Mother's care and placing them in their respective father's custody. In the absence of clear and convincing evidence of detriment to the children, the juvenile court was statutorily required to place the children with his and her nonoffending noncustodial parent. (§ 361, subd. (c)(1) ["The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm"]; § 361.2, subd. (a).)

8

Prior to the dependency matter, B. resided with her father about four days a week and already had a relationship with him. N.'s father, who was deployed overseas since N.'s birth, financially supported Mother and N. and provided them with medical insurance. And by the time of the jurisdictional/dispositional hearing, N.'s father requested custody of his child with family law orders, noting that he was living in Orange County, and had changed his military status so he was no longer deployable. N.'s father also noted that the military would work with his schedule so he could care for his son and his son's special medical needs as a result of the injuries. There is no question that once N.'s father learned of the dependency matter, he took steps to have custody of his son, to develop a parental bond, and learn the skills necessary to meet his needs. There is no evidence here so as to override N.'s father and B.'s father of their statutory right to custody. Accordingly, Mother has failed to demonstrate that the juvenile court erred in placing the children out of Mother's care.

Mother's reliance on *In re Henry V.*, *supra*, 119 Cal.App.4th 522, is misplaced. In that case, a four-year-old child was removed from his mother's custody after the child was found to have three linear first and second degree burn marks on his buttocks. (*Id*. at pp. 525-526.) The examining doctors opined that the child's burns were most likely inflicted by the mother's curling iron. (*Id*. at p. 526.) The appellate court reversed the dispositional findings after concluding the juvenile court did not understand that its removal order had to be supported by clear and convincing evidence and that the social worker recommended removal from the mother's home primarily to obtain the mother's future cooperation. (*Id*. at pp. 529-530.) Here, by contrast, there was no indication

removal was intended to obtain Mother's cooperation or that the juvenile court misunderstood the standard to be applied. Indeed, the appellate record reflects that the juvenile court made its dispositional findings by clear and convincing evidence and, as we discussed *ante*, substantial evidence supports the juvenile court's decision to remove the children.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.