Filed 12/17/13  In re A.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.B. et al., Persons Coming Under the Juvenile Court Law. | |
| | D064187 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12895A-B) |
| v. | |
| C.R., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

C.R. appeals following the jurisdictional and dispositional hearings in the juvenile dependency case of her sons, A.B. and B.R. (together, the boys). C.R. contends the jurisdictional findings and the order removing A.B. from her custody are unsupported by substantial evidence. We affirm.

BACKGROUND

A.B. was born in November 1999. His father is Roland B. B.R. was born in November 2005. His father is Raymond R. C.R. has a daughter, Alexis B., who was born in December 1994 and is not a party to this appeal.

The family's child welfare history began in 1998 with a substantiated report in San Diego County that C.R. and Roland had emotionally abused Alexis. In August 2001, there was an inconclusive[1] report of sexual abuse of Alexis by an unknown perpetrator. In April 2007, there was a substantiated report that C.R. had physically abused Alexis and an inconclusive report that C.R. had physically abused A.B. Sometime that year, the family moved to San Jacinto, in Riverside County. In May 2009, there was an inconclusive report in Riverside County that C.R. had neglected A.B.

Around May 2011, B.R. told C.R. that A.B. had touched his penis. C.R. talked to the boys and told A.B. to stop. She asked A.B. why he had touched B.R. A.B. replied that Raymond's brother had made A.B. perform oral sex on him and touch his penis. C.R. claimed she tried to find counseling for the boys, but she was told that B.R. was too

---

1 An inconclusive report is one "that is determined by the investigator . . . not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (Pen. Code, § 11165.12, subd. (c).)

2

young, and A.B. refused to allow her to discuss the abuse. In early 2012, C.R. moved with the boys and Alexis to Oxnard, in Ventura County, where they lived with the maternal grandfather, who had physically abused C.R. when she was a child.

In December 2012, while at school, B.R. complained of pain in the genital area and stomach and said it hurt to sit. He seemed angry. When asked why, he said A.B. "was doing nasty things to him"; touching and stroking his penis; "mak[ing] him touch his [penis] until the white stuff comes out"; and "mak[ing] him put his [penis] into his butt." B.R. said that on several occasions when he and A.B. were home alone, A.B. made him "turn the television to the channel with the naked people." The boys shared a room with bunk beds, and B.R. said that at night A.B. "makes him jump into his bed without clothes." B.R. said that C.R. did not know what A.B. was doing to him.

During a forensic interview, B.R. disclosed that A.B. "told me to take off my clothes and get in his bed [and] told me to change the [television] channel to" one showing "[p]eople doing nasty stuff." B.R. said "this last occurred . . . [t]he day after yesterday [when] the rest of the family was going to dinner." B.R. said that A.B. used a dildo on him, told B.R. to orally copulate him and "told me to put my private part in his butt." A.B. told B.R. to perform one of the sexual acts "until white stuff came out" and B.R. confirmed "he had observed white stuff come out." B.R. said that the first incident occurred when the family lived in San Jacinto and the most recent incident occurred in November 2012. B.R. said he had not reported the abuse because he was afraid. A medical examination confirmed that B.R. had been anally penetrated; it appeared that there had been recent sexual abuse, consistent with his disclosures.

3

A.B. admitted he had touched B.R. in the fall of 2009, when A.B. was in the fourth grade and the family lived in San Jacinto. A.B. said that the last incident was another act of oral copulation when he was in the fifth grade, before the family moved to Ventura County, but also said that he had masturbated B.R. on December 15, 2012. A.B. admitted watching pornography on the computer, but denied showing it to B.R. A.B. disclosed that Raymond's brother "put his private part in my butt" when the family lived in San Jacinto, and this was part of the reason he molested B.R.

Police detectives and social workers interviewed C.R. When told of B.R.'s disclosures, C.R. did not seem surprised. She said "she was aware that [A.B.] had at one point molested [B.R.] but stated it was all in the past[,] when they lived in San Jacinto."[2] C.R. stated that B.R. disclosed the molestation in April 2012, and this led her to enroll the family in counseling with Caryn Landy in June.[3] According to C.R., Landy said that the boys had told her individually that there had been no recent incidents of sexual abuse and C.R. "did not need to be concerned about this any further." C.R. claimed "she was following all of [Landy's] directives" and that since the disclosure, she had "not left [the boys] alone for a second." When advised that B.R.'s medical examination indicated anal penetration, C.R. expressed disbelief.

[2] C.R. later testified, by offer of proof, "that she was aware that in 2009 there was an incident where [A.B.] touched [B.R.]," and "[s]he explained to them that that should not be happening any longer." "They appeared to be cooperative. She was not aware of any further ongoing incidents."

[3] C.R. testified, by offer of proof, that she went to Landy because the boys were acting out in school and having difficulty adjusting after the family's move to Ventura County.

C.R. also said that A.B. had been sexually abused by Raymond's brother two years previously. When C.R. asked A.B. why he had molested B.R., A.B. replied "that he was angry at [B.R.] for what [B.R.]'s uncle did to him." C.R. admitted that she had found A.B. watching pornography on television a couple of months earlier; she had then placed parental controls on the television, but there were currently no parental controls. A.B. had "once charged for adult channels." C.R. said that Alexis had recently told Landy that Raymond had sexually abused Alexis.[4]

Alexis was also interviewed. When asked if Raymond had abused her, she refused to answer. Later she testified, by offer of proof, that she slept in the boys' bedroom; she remained awake after they went to sleep, in separate beds; and "she never observed anything happening." During her interview, Landy said "that she was aware of two incidents between [B.R.] and [A.B.] both of which had occurred a long time ago" and "that [A.B.] had been molested by [B.R.]'s uncle and that [A.B.] molested [B.R.] because he was really angry."

In December 2012, the Ventura County Human Services Agency (the Ventura Agency) filed dependency petitions for 13-year-old A.B. and seven-year-old B.R. under Welfare and Institutions Code section 300,[5] subdivisions (b), (d) and (g). The petitions, as later amended, alleged as follows.

---

4     Landy did not report any of the disclosures of sexual abuse to child protective services or the police. She said that C.R. told her that the sexual abuse had been reported when the family lived in San Jacinto. The record shows no such report.

5     Further statutory references are to the Welfare and Institutions Code.

According to A.B.'s petition, he had a history of being sexually abused and was now a perpetrator. C.R. failed to obtain appropriate services to prevent future sexual abuse and failed to supervise A.B. adequately to prevent him from becoming a perpetrator. Roland had a history of violence and substance abuse and a prior conviction of sexual intercourse with a minor under the age of 16. (§ 300, subd. (b).) C.R. was aware A.B. had been sexually abused at least once and knew or reasonably should have known of the abuse, but failed to protect him. Roland had the prior conviction noted above (§ 300, subd. (d)) and his whereabouts were unknown (§ 300, subd. (g)).

According to B.R.'s petition, he suffered sexual abuse by A.B., including oral copulation and physical findings of anal penetration. C.R. knew or reasonably should have known of the abuse and failed to supervise and protect B.R. from further abuse, placing him at substantial risk of serious physical harm. (§ 300, subds. (b) & (d).) Raymond was also aware of the abuse and failed to protect B.R. (§ 300, subd. (b).) Raymond had sexually abused Alexis. (§ 300, subd. (d).) Raymond's whereabouts were unknown. (§ 300, subd. (g).)

B.R. was detained in a shelter where he had behavioral problems. A.B. was detained in a group home where he acted out aggressively and sexually. Both boys received therapy. During a supervised visit in February 2013, C.R. attempted to discuss the case with A.B. although she had been told not to do so.

In March 2013, the Ventura County Superior Court dismissed the portion of A.B.'s petition alleging that Roland's whereabouts were unknown (§ 300, subd. (g)) and made

true findings on the remaining allegations of the boys' petitions. The court ordered the case transferred to San Diego County, where C.R. had moved.

In May 2013, A.B. was arrested for felony vandalism and detained in a juvenile detention facility in Ventura County. A couple of days later, he was moved to Polinsky Children's Center in San Diego County. Later that month, San Diego County Juvenile Court declared A.B. a dependent; ordered him removed from C.R.'s custody (§ 361, subd. (c)(1)) and placed with a nonrelative extended family member; and ordered him detained in a treatment facility pending placement. The court declared B.R. a dependent and ordered him placed with C.R.

## THE JURISDICTIONAL FINDINGS

C.R. contends the jurisdictional findings pursuant to section 300, subdivisions (b) and (d) are unsupported by substantial evidence she knew, or should have known, that B.R. was in danger of further abuse and she failed to protect him adequately.[6]

Section 300, subdivision (b) allows a dependency when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." Section 300, subdivision (d) allows a dependency when "[t]he child has

---

[6] C.R. concedes that the section 300, subdivision (g) findings regarding Roland and Raymond supported jurisdiction, but "asks this Court to review the findings as they relate to her as they are relevant to the argument she makes . . . regarding removal." "Dependency proceedings are civil in nature and are designed to protect the child, not to punish the parent. [Citation.] Therefore, the court takes jurisdiction over children (§ 300); it does not take jurisdiction over parents. Moreover, the court has jurisdiction over the children if the actions of either parent bring the child within one of the statutory definitions in section 300." (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.)

been sexually abused, or there is a substantial risk that the child will be sexually abused, . . . by . . . a member of his or her household, or the parent . . . has failed to adequately protect the child from sexual abuse when the parent . . . knew or reasonably should have known that the child was in danger of sexual abuse." Section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdictional hearing. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.) A parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.) The child need not have been actually harmed for the court to assume jurisdiction. (See *In re James R.* (2009) 176 Cal.App.4th 129, 135.)

In the juvenile court, the Agency had the burden of proof by a preponderance of the evidence. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; § 355, subd. (a).) C.R. now has the burden of showing that the jurisdictional findings are not supported by substantial evidence. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135.) We view the record in the light most favorable to the juvenile court's ruling. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140).

The trial court questioned C.R.'s credibility. The court was not required to believe her version of events and could have reasonably concluded she knew or should have known about the sexual abuse and failed to take appropriate action. Contrary to C.R.'s claims, the boys and Alexis said that C.R. was aware that several incidents of sexual abuse occurred in 2011, and there was further sexual abuse in 2012. B.R. told a detective that A.B. had masturbated him and tried to insert a dildo in his anus in November 2012.

8

A.B. "admitted to last masturbating [B.R.] on [December 15]." Landy said that C.R. had come to her for treatment in August, not June, and C.R.'s stated reason for seeking counseling was B.R.'s violent behavior and bed-wetting, not sexual abuse. Landy also denied that she had given C.R. any "advice," although C.R. claimed that she had abided by Landy's "directives." C.R. claimed that since April, she had not left the boys alone, but the boys reported there had been further sexual abuse months later. B.R. said one incident of abuse occurred when C.R. was gone; she left A.B. in charge and told B.R. to do what A.B. told him to do.

Substantial evidence supports the jurisdictional findings.

THE REMOVAL

Section 361, subdivision (c)(1) provides that before a child can be removed from parental custody, the Agency must prove, by clear and convincing evidence, "[t]here is or would be a substantial danger to [his] physical health, safety, protection, or physical or emotional well-being if [he] were returned home" and removal is the only reasonable means of protecting his physical health. "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus . . . is on averting harm to the child." (*In re Diamond H*., *supra*, 82 Cal.App.4th at p. 1136.) On appeal, C.R. has the burden of showing there is no substantial evidence justifying A.B.'s removal. (*Id*. at p. 1135.)

There is clearly substantial evidence to support A.B.'s removal from the home. The boys were in need of therapy and protection. Returning A.B. to the home where

9

C.R. had already been ineffective in protecting the boys could have been seriously harmful to both boys.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.