98 Cal.Rptr.2d 715 (2000)
82 Cal.App.4th 1127
In re DIAMOND H., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Helen T., Defendant and Appellant.
No. D034773.
Court of Appeal, Fourth District, Division One.
July 17, 2000.
*717 Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.
*718 Carl Fabian, under appointment by the Court of Appeal, San Diego, for Minor.
*716 McINTYRE, J.
Helen T. appeals an order declaring her minor daughter Diamond H. a dependent of the juvenile court and removing Diamond from her custody. Helen contends: (1) there was no current risk to Diamond to support the court's jurisdiction and disposition orders; (2) the court erred in denying Helen reunification services; (3) the denial of services violated Helen's rights under the Americans With Disabilities Act (ADA) and her rights to due process and equal protection; and (4) her due process rights were violated when the court denied reunification services after advising her she had six months to participate in and complete services. We affirm the judgment.

FACTUAL AND PROCEDURAL

BACKGROUND
Helen is developmentally disabled. Her history with child protective services, dating back to 1988, includes problems with neglect, physical abuse, inadequate food in the home, failure to get proper medical attention for her children and domestic violence by Helen's boyfriend. Helen began receiving services from the San Diego Regional Center in 1992. Her minor children, Christina, Larry and Ariel, became dependents of the juvenile court in 1997 after a finding Helen was unable to properly care for them. According to a psychological evaluation, Helen has a chronic mental disorder that will never be in remission even with psychotherapy, education and medication. Helen was indifferent to parenting her children and had little or no understanding of her role as a parent despite years of significant intervention at many levels. While pregnant with Diamond, Helen was the victim of domestic violence by Diamond's father, Delmar H.
Diamond was born in August 1999. A few days later, the San Diego County Health and Human Services Agency (Agency) filed a petition in the juvenile court under Welfare and Institutions Code section 300, subdivision (b), (all statutory references are to the Welfare and Institutions Code), alleging Diamond was at risk of harm as a result of Helen's inability to properly care for her due to Helen's developmental disability. The court detained Diamond out of home and advised Helen she had six months to participate in court-ordered reunification services before it would select a permanent plan for Diamond.
In the meantime, Ariel's case had been set for a section 366.26 selection and implementation hearing. Helen filed a section 388 modification petition seeking to have Ariel placed in her custody, receive six additional months of services and vacate the section 366.26 selection and implementation hearing at which Agency sought to terminate her parental rights. At a settlement conference, the court continued Diamond's case so that it trailed the hearing in Ariel's case. The court indicated it would consider evidence from Ariel's case in making its decision in Diamond's case.
According to the evidence presented in Ariel's case, Helen regularly attended therapy for about two months where issues of Helen's anger, depression and relationships were addressed. Helen denied hitting her children and claimed there was always food in the home. Neither Helen's therapist nor the bonding study expert could give an opinion on Helen's ability to adequately parent Ariel.
Ariel was bonded to Helen who interacted appropriately with her. Two workers from Independence for Life Choices (ILC), who worked with Helen on parenting techniques and independent living skills, believed Helen was aware of Ariel's special needs and could safely parent her. However, the social worker disagreed, stating Helen could not adequately care for a child full-time without constant supervision.
Helen did not know why Ariel was removed from her custody. She believed *719 Ariel's special needs were dietary. Helen could not remember when she went to a domestic violence class or what she had learned.
After considering the evidence and hearing argument, the court denied Helen's section 388 modification petition. Finding adoption was in Ariel's best interests, the court terminated Helen's parental rights to Ariel.
At the jurisdiction and disposition hearings in Diamond's case, the court considered the various reports prepared by Agency and the psychological evaluation of Richard Owen, Ph.D., prepared for the siblings' hearings. The parties stipulated the court could consider certain evidence from Ariel's case. Additionally, the court heard testimony from social worker Andrea Weil who stated that Helen interacted appropriately with Diamond during visits. However, Weil was concerned when Helen did not initially notice Diamond had tremors. All of Helen's visits had been supervised. Although Helen's parenting skills had improved, they were not sufficient to enable her to parent Diamond throughout childhood.
In deciding not to offer Helen reunification services, Weil considered the fact there had been 17 referrals on Helen in 11 years. During that time, Helen received a significant amount of services from the Regional Center. In spite of Helen's participation in parenting classes and counseling, the older minors remained at risk in her care. Permanent plans had been recommended for these children because they could not be safely returned to Helen. Weil also considered Dr. Owen's assessment that Helen's cognitive and neurological impairment or mental disorder would never improve to the extent she could successfully care for her children without assistance. Although Helen presently had in-home services, her cooperation with such services had been inconsistent in the past.
Weil also expressed concern about Helen's judgment, maturity, ability to make emergency decisions for Diamond, and the fact there had been physical abuse in the home. Helen had recently displayed anger when she became upset with Diamond's father. Diamond likely had special needs that would require intervention, including ensuring she received proper professional treatment as well as implementing treatment in the home.
After considering the evidence and hearing argument, the court denied Helen's motion to dismiss the petition. The court sustained the allegations of the petition, declared Diamond a dependent of the court, ordered her custody removed from Helen under section 361, subdivision (c), and placed her in licensed foster care. The court ordered no reunification services under section 361.5, subdivision (b)(10), but continued supervised visits between Helen and Diamond.

DISCUSSION

I
Helen contends the court erred in refusing to dismiss the petition after Agency failed to prove a current risk of harm to Diamond. She asserts the evidence was insufficient to support a finding her developmental disability rendered her unable to provide regular care for Diamond.

A
Under the substantial evidence rule, we have no power to pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or determine where the weight of the evidence lies. Rather, we "accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact. [Citation.]" (In re Casey D. (1999) 70 Cal.App.4th 38, 52-53, 82 Cal. Rptr.2d 426.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. (In re Geoffrey G. *720 (1979) 98 Cal.App.3d 412, 420, 159 Cal. Rptr. 460.)

B
Section 300, subdivision (b) provides the court may adjudge a minor to be a dependent child of the court if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's inability to provide regular care for the child due to the parent's mental illness or developmental disability. "In determining whether the child is in present need of the juvenile court's protection, the court may consider past events. [Citation.]" (In re Petra B. (1989) 216 Cal.App.3d 1163, 1169, 265 Cal.Rptr. 342.)
Contrary to Helen's position, the court did not make a "presumptive determination" of parental inadequacy based on her developmental disability. Rather, the evidence showed Helen's chronic mental disorder, even with education, therapy and medication, prevented her from being able to safely parent Diamond throughout childhood. In spite of having participated in services for 11 years and made positive changes in her life, Helen was unable to reunify with her other children. Helen's developmental delays require continuous assistance with managing her own needs and underlying aggressive impulses. Diamond's special needs would require recognition, vigilance and intervention that Helen could not provide. Although the two ILC workers, who were advocates on Helen's behalf, believed she could properly parent, other evidence contradicted their opinions.
Further, at the time of the hearing, Helen had not completed a domestic violence education program and continued to display anger toward Diamond's father. Her appropriate interactions with Diamond had been with assistance and supervision. Helen did not notice Diamond had tremors. Her judgment, maturity and ability to make emergency decisions on behalf of Diamond were questionable. Because substantial evidence supports the court's finding Helen was a current risk to Diamond, the court properly sustained the allegations of the petition under section 300, subdivision (b).

II
Helen contends the court erred in ordering custody of Diamond be removed from her under section 361, subdivision (c). She asserts (1) there was no clear and convincing evidence warranting removal, (2) the court should have considered less drastic measures and (3) the court failed to state the factual basis for its removal order.

A
Before the court may order a minor physically removed from his or her parent, it must find, by clear and convincing evidence, the minor would be at substantial risk of harm if returned home and there are no reasonable means by which the minor can be protected without removal. (§ 361, subd. (c)(1).) A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. (In re Jeannette S. (1979) 94 Cal. App.3d 52, 60, 156 Cal.Rptr. 262.) The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. (In re Jamie M. (1982) 134 Cal. App.3d 530, 536, 184 Cal.Rptr. 778, citing In re B.G. (1974) 11 Cal.3d 679, 699, 114 Cal.Rptr. 444, 523 P.2d 244.)

B
Here, the evidence showed Helen, in spite of having received substantial services and made positive changes in her life, was unable to provide proper care for Diamond. Given Helen's lack of judgment, maturity and ability to make emergency *721 decisions, Diamond would be at risk if she remained in Helen's care.
Further, in finding Diamond could not safely remain in Helen's custody, the court necessarily considered but rejected the alternative of placing Diamond with Helen and ordering services. The court expressly found reasonable efforts had been made to prevent or eliminate the need for removal as required by section 361, subdivision (c). (See In re Stephen W. (1990) 221 Cal.App.3d 629, 646, 271 Cal.Rptr. 319.) The evidence showed that having received extensive services for many years, Helen still could not safely parent her children on a full-time basis. Substantial evidence supports the court's order removing Diamond from Helen's care and custody under section 361, subdivision (c)(1). Although the court did not state a factual basis for its removal order, any error is harmless because it is not reasonably probable such findings, if made, would have been in favor of continued parental custody. (See In re Jason L. (1990) 222 Cal.App.3d 1206, 1218, 272 Cal. Rptr. 316.)

III
Helen contends the court abused its discretion in denying her reunification services under section 361.5, subdivision (b)(10). She asserts the evidence showed she had made reasonable efforts to improve her parenting skills and it was in Diamond's best interests that Helen receive services.

A
In enacting section 361.5, subdivision (b), the Legislature has recognized that, notwithstanding the crucial role of reunification services when a minor is removed from the home, it may be useless under certain circumstances to provide services. (In re Joshua M. (1998) 66 Cal. App.4th 458, 467, 78 Cal.Rptr.2d 110; In re Rebecca H. (1991) 227 Cal.App.3d 825, 837, 278 Cal.Rptr. 185.) "Section 361.5 reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody. The exceptions in subdivision (b) to the general mandate of providing reunification services `demonstrate a legislative determination that in certain situations, attempts to facilitate reunification do not serve and protect the child's interest.' [Citation.]" (In re Joshua M., supra, 66 Cal.App.4th at p. 470, 78 Cal. Rptr.2d 110.)
The exception applicable here states the court need not provide reunification services to a parent when it finds, by clear and convincing evidence: (1) the court ordered a permanent plan for any siblings of the minor because the parent failed to reunify with the sibling, or (2) parental rights over a sibling were terminated and, according to the findings of the court, the parent has not since made a reasonable effort to treat the problems that led to removal of the sibling. (§ 361.5, subd. (b)(10).) If subdivision (b)(10) applies, the court has no discretion to provide reunification services unless it finds, by clear and convincing evidence, that reunification is in the child's best interest. (§ 361.5, subd. (c).)

B
Here, the court properly denied Helen reunification services under section 361.5, subdivision (b)(10). Permanent plans had been ordered for Helen's other children after she failed to reunify with them and her parental rights to Ariel had been terminated. Some of the problems that led to removal of the siblings, including poor parenting skills, anger management and domestic violence, had not been addressed to the point that Helen could safely parent Diamond. Despite the ample services Helen received for many years, she was unable to care for Diamond without full-time supervision, thus creating a very real concern for continued risk. (Deborah S. v. Superior Court (1996) 43 Cal.App.4th 741, 751, 50 Cal.Rptr.2d 858.) Helen's lack of success, in spite of her *722 reasonable efforts, showed she was unlikely to benefit from further services. (See In re Joshua M., supra, 66 Cal.App.4th at p. 471, 78 Cal.Rptr.2d 110.)
Further, there was no showing reunification was in Diamond's best interest. Helen lacked the necessary skills to parent Diamond throughout childhood. Diamond has special needs requiring recognition, vigilance and intervention that Helen is unable to provide. Further services will not facilitate Diamond's return to Helen's custody. "Certainly, it cannot serve the child's best interest to unnecessarily prolong the lengthy dependency process when there is no chance of successful reunification because of circumstances that make it `fruitless to provide reunification services....' [Citation.]" {In re Joshua M., supra, 66 Cal.App.4th at p. 470, 78 Cal. Rptr.2d 110.)

IV
Helen contends section 361.5, subdivision (b)(10), as applied here, violated her rights under the ADA. She further contends denial of services under that statute violated her rights to due process and equal protection.

A
In response to the discrimination faced by disabled individuals, Congress enacted the ADA (42 U.S.C. § 12101 et seq.). Title II of the ADA prohibits excluding qualified individuals from participating in or being excluded from the services, programs or activities of a public entity. Title III provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation. Both provisions apply to state and local public entities. (See 42 U.S.C. §§ 12131-12134, 12181-12188.)
In enacting the ADA, however, Congress did not intend to change the obligations imposed by unrelated statutes. Although a parent may have a separate cause of action under the ADA based on a public entity's action or inaction, such a claim is not a basis to attack a state court order. (In Interest of Torrance P. (1994) 187 Wis.2d 10, 522 N.W.2d 243, 246; In re B.S. (1997) 166 Vt. 345, 693 A.2d 716, 720.) Thus, the ADA does not directly apply to juvenile dependency proceedings and cannot be used as a defense in them. (See In the Interest of B.K.F. (La.App.1997) 704 So.2d 314, 317-318.)
California's juvenile dependency law requires the courts and social services agencies to consider a parent's limitations and disabilities in providing reasonable services. (In re Victoria M. (1989) 207 Cal.App.3d 1317, 1320, 255 Cal.Rptr. 498; In re Elizabeth R. (1995) 35 Cal.App.4th 1774, 1790, 42 Cal.Rptr.2d 200.) The ADA does not change this requirement nor does it provide a separate basis for challenging the actions of the court or Agency. Rather, any challenge a parent has under the ADA for alleged violations must be raised in a separate cause of action in federal court. (See, e.g., Eric L. By and Through Schierberl v. Bird (D.N.H.1994) 848 F.Supp. 303.) Thus, Helen's claimed violation of the ADA is not a basis to attack the court's order under section 361.5, subdivision (b)(10) denying her reunification services.
Further, both Agency and the court were aware of Helen's disability and her need for special services tailored to her limitations. Helen was offered and received a multitude of services that accommodated her developmental disability in the siblings' cases. In addition to parenting classes and individual and couples therapy, Helen received in-home services from the PRIDE program, the Regional Center and the ILC to assist her with daily tasks. In spite of the ample services she received for many years, Helen was presently unable to safely parent Diamond. As we previously discussed, the law does not require fruitless efforts toward reunification *723 that would unreasonably delay stability and permanence for Diamond.

B
Helen asserts the court's order denying reunification services under section 361.5, subdivision (b)(10) violated her due process rights because it did not consider her current circumstances. However, Helen was not denied reunification services in Diamond's case based solely on the past events of her unsuccessful reunification with the siblings and the termination of her parental rights to Ariel. In denying services to Helen under section 361.5, subdivision (b)(10), the court necessarily found she (1) had reunification services terminated and a permanent plan implemented on behalf of Diamond's siblings and (2) had not made reasonable efforts to resolve the problems that led to the removal of those siblings. (See Shawn S. v. Superior Court (1998) 67 Cal.App.4th 1424, 1428-1430, 80 Cal.Rptr.2d 80.) The reasonable efforts finding was based on Helen's current circumstances.
Moreover, the decision as to reunification services arose in the context of a finding, by clear and convincing evidence, Helen could not safely care for Diamond at the present time, necessitating Diamond's removal under section 361, subdivision (c). (See In re Baby Boy H. (1998) 63 Cal.App.4th 470, 477, 73 Cal.Rptr.2d 793.) The statutory scheme "represents a reasonable and rational means to advance a prime purpose of juvenile court law providing protection and stability to dependent children in a timely fashionby efficiently allocating scarce reunification services." {In re Joshua M., supra, 66 Cal.App.4th at p. 473, 78 Cal.Rptr.2d 110.) Thus, section 361.5, subdivision (b)(10) comports with the requirements of due process. {In re Baby Boy H., supra, 63 Cal.App.4th at p. 478, 73 Cal.Rptr.2d 793.)
Helen's claim the use of past events and conditions to deny reunification services under section 361.5, subdivision (b)(10) violates the equal protection clause is similarly flawed. The equal protection clause requires some rationality in the nature of the class singled out and requires the distinctions drawn have some relevance to the purpose for which the classification is made. (In re Christina A. (1989) 213 Cal.App.3d 1073, 1079, 261 Cal.Rptr. 903.) As we previously discussed, the stated purpose of section 361.5, subdivision (b)(10) is to exempt from reunification services those parents who are unlikely to benefit. This purpose ensures the wellbeing of children whose parents are unable or incapable of caring for them by affording them another stable and permanent home within a definite time period. {In re Christina A., supra, 213 Cal.App.3d at p. 1079, 261 Cal.Rptr. 903.) Section 361.5, subdivision (b)(10) bears a rational relation to these purposes. "It is reasonable for the state, before expending its limited resources for reunification services, to distinguish between those who would benefit from such services and those who would not." (Id. at p. 1080, 261 Cal.Rptr. 903; In re Joshua M., supra, 66 Cal.App.4th at p. 474, 78 Cal.Rptr.2d 110.) The court's denial of reunification services under section 361.5, subdivision (b)(10) did not violate Helen's right to equal protection.

V
Helen contends her due process rights were violated when the court denied her reunification services after advising her at an earlier hearing that she had six months to participate in and complete services. She asserts she justifiably relied on the court's statement regarding the time in which she must reunify with Diamond and she was making progress in services.
The record shows the court advised Helen at the detention hearing of the limited time frame for reunification services in the case of a child, such as Diamond, who was under three years of age at the time of removal. (§§ 361.5, subd. (a)(2) & 366.21, subd. (e).) Although the statutes governing *724 the provision of services do not require such an advisement until the matter reaches disposition (§ 361.5, subd. (a)), the court at the detention hearing "shall order services to be provided as soon as possible to reunify the child and his or her family if appropriate." (§ 319, subd. (b).)
At the time of the detention hearing, Diamond's case was still being investigated and Agency had not yet informed the court it would request denial of reunification services. In an effort to timely provide Helen with services, the court properly notified her of the limited time frame she had to reunify with Diamond. One month later, Agency submitted its jurisdiction and disposition report in which it recommended denying Helen reunification services. Helen was present with counsel in court at that time and thus had notice of Agency's recommendation.
Procedural due process requirements in dependency cases generally focus on "the right to a hearing and the right to notice." (In re Crystal J. (1993) 12 Cal. App.4th 407, 412-413, 15 Cal.Rptr.2d 613; In re Joshua M., supra, 66 Cal.App.4th at p. 471, 78 Cal.Rptr.2d 110.) Here, Helen had both notice and an opportunity to be heard on the issue of denial of reunification services. Under these circumstances, no due process violation occurred.

DISPOSITION
The judgment is affirmed.
KREMER, P.J., and NARES, J., concur.