Filed 3/22/24  In re M.G.-L. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re M. G.-L., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.G. et al.,<br><br>        Defendants and Respondents;<br><br>M. G.-L., a Minor, etc., Appellant. | A166762<br><br>(San Francisco City & County Super. Ct. No. JD22-3199) |
| In re M. G.-L., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.G.,<br><br>        Defendant and Appellant;<br><br>T.L.,<br><br>        Defendant and Respondent. | A167849<br><br>(San Francisco City & County Super. Ct. No. JD22-3199) |

1

After a disposition hearing held pursuant to Welfare and Institutions Code section 358,[1] the juvenile court ordered M. G.-L. (minor) removed from the physical custody of D.G. (mother).  (§ 361, subd. (c)(1).)  The court also ordered reunification services for mother, finding that those services were in minor's best interest even though the reunification bypass provisions of section 361.5, subdivision (b) applied.  Minor appeals from the portion of the disposition order providing reunification services, while mother cross-appeals from the portion removing minor from her custody.  In light of the juvenile court's subsequent termination of reunification services, we dismiss minor's appeal as moot.  And because substantial evidence supports the findings underlying the removal of minor from mother's custody, we affirm the disposition order.

## FACTS AND PROCEDURAL HISTORY

On June 9, 2022,[2] mother reported that she was assaulted in a domestic violence incident with minor's father, Tony L. (father).  Minor, then only three months old, slept nearby in a crib and was unharmed.  Mother ran upstairs to get away and call police.  Although this event was the only domestic violence incident mother reported experiencing with this man, it arose against a history of domestic violence with previous partners and mother's past substance abuse that resulted in over 25 prior child welfare referrals and dependency cases involving mother's other children.  Given this history, agency social workers had concerns about the infant minor's exposure to violence, potential injury, or emotional harm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] All dates refer to the year 2022 unless otherwise noted.

The San Francisco Human Services Agency (agency) filed a section 300 petition seeking to detain minor from father. This became the agency's second open case concerning mother's children; the other active dependency case had been open for years and related to minor's older half-sister (sister).

Two weeks later, after mother failed to engage in services or safety planning for the minor, and after declining to seek an extension of a restraining order against father, the agency filed an amended petition seeking to detain minor and sister from mother. The juvenile court then detained both children from mother and placed them outside of mother's home. In August, mother recanted her allegations that father had physically abused her during the June 9 incident. She claimed to have made the false report in response to father's threats to call her social worker and make allegations she feared might result in the removal of her children from her care.

Combined jurisdiction and disposition hearings were held on October 7, 13, 17, and 20. The juvenile court found that minor suffered or was at substantial risk of suffering serious physical harm as a result of the parents' failure or inability to supervise or protect the child adequately. It found that father was arrested following the June 9 altercation that occurred while minor was present, and on another occasion, the parents engaged in a verbal argument where sister intervened to protect her mother by attempting to bite father and hit him with a broom. It also found that mother had been inconsistent in complying with some of her service requirements. Lastly, the court found that because mother's other children had been abused or neglected, there was also a substantial risk that minor will be abused or neglected. Mother's oldest child had been removed from her care and was adopted after she failed to reunify with him. Sister was removed from

mother's care multiple times related to domestic violence, and — at the time of the disposition hearing — had a section 366.26 hearing pending.

At the conclusion of the disposition hearing, the juvenile court removed minor from mother's physical custody, finding that returning minor to mother would pose a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor, that there were no reasonable means by which the minor's physical health could be protected without removal, and that the agency had made reasonable efforts to prevent or to eliminate the need for removal. Although the agency recommended bypassing mother for services, the court ordered reunification services to continue in minor's best interest. In ruling, the court commended mother on her "follow through" with her therapist but indicated that mother's consistency concerning "everything else" was "of true concern to the court."

Minor filed a timely notice of appeal from the disposition hearing and mother subsequently filed a cross-appeal.

## DISCUSSION

Minor argues the court erred in finding that the continuation of reunification services for mother was in minor's best interest. However, as the agency notes in its brief, the juvenile court terminated those services on November 16, 2023. Not only do we lack the power to "rescind services that have already been received . . . ." (*In re Pablo D.* (1998) 67 Cal.App.4th 759, 761), but also the juvenile court's subsequent order terminating reunification services effectively granted minor the relief she seeks in this appeal. "Because we are unable to fashion an effective remedy, the appeal is moot."[3] (*Ibid.*)

_____

[3] We take judicial notice of the November 16, 2023, minute order reflecting the juvenile court's termination of reunification services. (Evid. Code, § 452, subd. (d)(1).) The appellate "court may examine a suggestion of

4

Next is the matter of mother's cross-appeal. As a threshold issue, the agency contends the cross-appeal is untimely. We disagree. Minor timely filed notice of the first appeal on December 12 — 53 days after the challenged October 20 order was filed. The filing of minor's notice of appeal extended mother's time to file a cross-appeal until 20 days after the superior court clerk sent notification of the first appeal. (Cal. Rules of Court, rule 8.406(b).) But because the clerk failed to send mother the requisite notification, that 20-day period had not even *begun* — much less expired — by the time mother filed her notice of cross-appeal on May 18, 2023. Further, we reject the agency's argument that mother was sufficiently notified by being served with minor's opening brief. (*Ibid*. [extension to run until 20 days after the *superior court clerk* sends notification of the first appeal].) Accordingly, we conclude that the cross-appeal is timely.

Mother's claim, however, fails on its merits. Mother challenges the juvenile court's order removing minor from her physical custody. In relevant part, section 361 precludes removal "unless the juvenile court finds clear and convincing evidence" to show that there "is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . custody." (§ 361, subd. (c)(1).) "[T]he juvenile court must determine whether a child will be in substantial danger if permitted to remain in the parent's physical custody,

---

mootness on its own motion." (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 479.) In any event, the agency's brief raised the specter of mootness by notifying this court that reunification services had been terminated, and mother recognized as much in her reply, arguing that the termination of services did not moot her own cross-appeal of the order removing minor from her custody.

considering not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re I.R.* (2021) 61 Cal.App.5th 510, 520 (*I.R.*).) Section 361 also requires the juvenile court to determine "whether reasonable efforts were made to prevent or to eliminate the need for removal . . . ." (§ 361, subd. (e).) According to mother, no substantial evidence supports such findings here. We disagree.

In reviewing a finding that must be proven by clear and convincing evidence, we must ascertain "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) "Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.)

Here, the record discloses substantial evidence that returning minor to mother's physical custody would present a substantial danger to the child's physical or emotional well-being. As both parties acknowledge, emotional harm may result from domestic violence. (See *In re J.S.* (2014) 228 Cal.App.4th 1483, 1494, disapproved on another ground in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1003, fn. 4.) And, as the agency's investigation revealed, mother's circumstances and history,

including violent or potentially violent altercations with father, raised serious concerns about minor's welfare.[4]

Six days before the June 9 incident, father texted the social worker supervising sister's open case. When the social worker reached father by phone, father complained that mother slashed his tires, was using crystal methamphetamine, and would scream and try to hit him in front of the children. Instead of following a safety plan the agency put in place to de-escalate conflict between the parents, mother would not allow father to walk away from such conflicts. Father had to jump out of the balcony to escape. This detail was corroborated by a witness who had seen father jumping out of the balcony during the couple's verbal disputes. Thus, even when father attempted to reduce the intensity of a conflict, she actively thwarted those attempts, leaving father to choose between potentially violent escalation and potentially injurious escape.

Father also disclosed an incident in which sister tried to hit him with a broom and bite him. Again, the story was corroborated: Sister told the social worker she wanted "to protect" mother. In other words, sister witnessed a situation in which she believed mother needed to be defended using physical violence. This response exemplifies the physical danger and emotional harm produced by the conflict between the parents.

The June 9 incident itself is cause for grave concern. According to mother's original report to police, father accused mother of stealing the rims from his truck before grabbing her hair, throwing her to the floor, and punching her in the head ten times — all in close physical proximity to minor, who was sleeping. Father reported it differently, claiming he

---

[4] We grant mother's unopposed request to strike (and we do not consider) those parts of the appellate record that were not before the juvenile court at the time of the hearing.

confronted mother *after* she slashed his tires. She then threatened to damage his other cars, and in turn, he threatened to call the social worker. In response, mother called the police and, according to father, fabricated the report that he assaulted her. Father's account may be viewed as aligning more closely with mother's present claim: that father threatened to contact the social worker, that mother became upset and retaliated by calling the police, and that mother's false allegations of domestic violence resulted in father's arrest. Given this state of the evidence, the juvenile court was entitled to credit mother's current recantation to conclude that *she* was the aggressor — acting deliberately and deceitfully to cause father's wrongful arrest. One social worker described this false report as an example of mother's failure to control her anger or impulses. Another worker characterized the "unhealthy" relationship and threatening behaviors of the parents as indicative of intimate partner violence.

"[T]he minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.) Father acknowledged that he and mother had verbal arguments in front of the children. He reported that mother screamed, yelled at him, and tried to hit him in front of the children. These facts contribute to the juvenile court's conclusion that returning minor to mother's custody would present a substantial risk of harm.

Arguing against this conclusion, mother contends there was no substantial risk of harm at the time of the disposition hearing because her romantic relationship with father had ended. To this end, she relies on two cases where the breakup of an abusive relationship contributed to the

appellate court's conclusion that no substantial evidence supported the removal of a minor from a parent's custody: *I.R., supra,* 61 Cal.App.5th 510 and *In re Ma.V.* (2021) 64 Cal.App.5th 11. Neither case persuasively supports her position.

*In re Ma.V.* is distinguishable because the parent in that case was not the abusive aggressor in the relationship. Here, however, a protective services worker testified that a safety plan was needed for mother and father, in part because mother had been reported to be the aggressor in conflicts. Also, unlike the parent in *In re Ma.V.,* mother has not consistently participated in or benefited from services offered to support her. There, the parent had not contacted her abuser for ten months and engaged in parenting, domestic violence, and individual counseling services through the Veterans Administration. (*In re Ma.V., supra*, 64 Cal.App.5th at p. 19.) Here, by contrast, mother failed to engage or was slow to respond to multiple service referrals despite having the ability to do so. Since sister's first dependency case opened, mother had received approximately 88 months of services, off and on, but still showed little progress. Mother's participation with her therapist was also inconsistent; the therapist's most recent report was that mother was not progressing. The inability to avail herself of services concerned the agency as it continued a pattern that left unaddressed the behaviors that brought minor and sister to the agency's attention.

The trial court was entitled to "consider [the] parent's past conduct as well as present circumstances." (*In re N.M.* (2011) 197 Cal.App.4th 159, 170.) Here, mother's domestic violence history transcends any one relationship. She had been involved in at least two other physically abusive relationships and, according to sister, had allowed an abusive ex-boyfriend to return home well after that relationship had ended. The ex-boyfriend then pulled sister's

9

hair. During that two-year past relationship, mother acknowledged there had been over 50 unreported domestic violence incidents. Mother also allowed another past abuser, the father of her oldest son, to reside in her home as recently as a few months before the disposition hearing. The violence occurring in that relationship contributed to the son's removal from mother's care. These ongoing associations with ex-partners with whom mother experienced intimate partner violence also support the trial court's conclusion that minor faced a substantial risk of harm at the time of the disposition hearing.

Mother's circumstances are also unlike *I.R.,* where the claim of potential danger to the child stemmed from father slapping the mother during an argument. There, after the incident, the father left the family home, discontinued contact with the mother, started domestic violence counseling, and — along with the mother — demonstrated a willingness to remain apart from one another. (*I.R., supra*, 61 Cal.App.5th at p. 521.) On that record, substantial evidence did not support the removal of the child from the father's care. Here, conversely, the June reports of conflict in the home did not suggest an unprecedented solitary event. They raised an ongoing pattern of conflict and violence in front of the minor. They also added to a much longer history of domestic violence that mother experienced with other partners and that contributed to the removal of her other children. In sum, substantial evidence supports the juvenile court's removal order.

There is also substantial evidence for the juvenile court's determination that "reasonable efforts were made to prevent or to eliminate the need for removal . . . ." (§ 361, subd. (e).) After the June 9 incident, the agency scheduled two child and family team (CFT) meetings to create a safety plan for minor and sister; mother missed both. Mother told a social worker that

10

she would not agree to participate in a CFT meeting concerning the minor. Based on a referral she had requested well before June 9, mother already had domestic violence support services available to her. But after failing to answer or return the service provider's calls, they closed the case. This failure to communicate continued a pattern with other service providers the agency recognized from its work with mother. And as the disposition report noted, by the time of the June 9 incident, mother was already receiving family maintenance services as part of sister's dependency case, in addition to more than three years of services mother had received in connection with sister's previous dependency case.

In this case, both before and after June 9, the record shows that mother was offered various services, including domestic violence prevention, Wrap (family therapy), housing, the Homeless Prenatal Program, drug testing, and individual counseling. Acknowledging that mother was unorganized and could become easily overwhelmed, the agency emailed mother her appointments and informed mother's support people of the appointments as well. Additionally, the agency occasionally intervened to stop service providers from closing referrals due to mother's lack of engagement. Despite these resources and supports to address the issues underlying mother's dependency case, mother's inability to follow up and address these underlying issues remained a primary concern of the agency. Historically, mother struggled to follow the agency's case plan. Here, too, mother's "real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.) The determination that the agency made the requisite efforts was therefore supported by substantial evidence.

11

Finally, the same substantial evidence supports the trial court's finding that there were no reasonable alternatives to "remov[e] the minor from the minor's parent's . . . custody." (§ 361, subd. (c)(1).) Mother's failure to attend CFT meetings and her failure to avail herself of services, including domestic violence services she had personally requested, suggest that minor's safety could not be protected while she remained in mother's physical custody. And the reasonableness of mother's suggested alternative — that the juvenile court require her to live separately from *any* adult male — is undermined by her previous willingness to allow into her home an abusive ex-boyfriend from whom she already lived apart.

In sum, substantial evidence supports the juvenile court's order to remove minor from mother's physical custody.

### DISPOSITION

The appeal in case No. A166762 is dismissed as moot, and the disposition order challenged in case No. A167849 is affirmed.

Smiley, J.[*]

We concur:

Brown, P. J.

Streeter, J.

*San Francisco Human Services Agency v. M. G.-L.* (A166762, A167849)

---

[*] Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.