Filed 3/4/26  In re C.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.R., <br><br> Defendant and Appellant. | F090396 <br><br> (Super. Ct. No. 24JP-00177-A) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Merced County, Mark V. Bacciarini, Judge.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Breana McMahon, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Peña, J. and Harrell, J.

Appellant S.R. challenges an order terminating her parental rights on the grounds the court failed to orally state on the record that it was terminating her rights and that it had reviewed certain reports. We conclude any error was harmless in light of the court's written orders clearly stating it was terminating appellant's parental rights. Consequently, we affirm the court's order terminating appellant's parental rights.

## BACKGROUND

### Idaho Department of Health and Welfare Report

A report filed by the Idaho Department of Health and Welfare (IDHW) indicated that appellant arrived at a hospital in Lewiston, Idaho and gave birth to C.R. in June 2024. Appellant has cerebral palsy, is wheelchair bound, and is "unable to provide basic care for herself or her child due to the limited use of her arms." The report indicated appellant was unable to feed, change or hold newborn C.R. without assistance. Nursing staff indicated appellant was completely reliant on others to meet her basic needs and hygiene, with the exception of feeding herself after a meal had been prepared for her.

Appellant had initially been accompanied to the hospital by Bryan H. Bryan is the cousin of Ryan D., who is the father of one of appellant's older children. Appellant indicated she was living with Ryan's family (the family) and that they were committed to providing long-term care for her and C.R. An officer asked Bryan to leave and told him he could return after the interview was over. However, Bryan did not return.

Appellant's mother, L.R., told officers she had not seen appellant for a couple years. L.R. said she was concerned due to domestic violence issues that occurred while appellant dated Ryan and due to appellant losing 20 pounds while in his care.

Appellant qualified for in-home caregivers but refused them. Appellant said she wanted to rely on the family, but IDHW was concerned because the family had not been present for the first 24 hours of C.R.'s life.

2.

*Appellant's Statements to Officer Paige Vanover*

Appellant told an Officer Paige Vanover that she gave birth to Ryan's child, D.D., in June 2023. That child was the subject of "a CPS case" and was now in the care of appellant's mother, L.R.[1]

Appellant and Ryan subsequently broke up, and appellant began speaking to a man online whose name she did not know. Appellant had consensual sex with the man twice, and the two agreed he would not be involved in C.R.'s life.

Appellant began communicating with Ryan again, and he said he would take her to Lewiston to live with his parents, T.H. and Chris H. After Ryan dropped off appellant, he left, and appellant had not spoken to him for two weeks. She did not know where he was or how to contact him.

Appellant was living with T.H., Chris, and their nephew Bryan. Bryan took appellant to the hospital when her water broke.

Vanover contacted L.R., who agreed to take guardianship over C.R.

*Initial Court Proceedings*

A court in Idaho took jurisdiction over C.R., on August 6, 2024. The Idaho court found it contrary to the child's welfare to remain in appellant's care due to her unstable housing and her inability to care for the child without physical assistance. The case was transferred to Merced County Superior Court, which accepted jurisdiction on September 20, 2024. C.R. was placed with L.R. on September 25, 2024.

*Subsequent Case Events*

Appellant had daily one and one-half hour visits with C.R. Appellant relied on the support of another individual throughout the entirety of her visit due to her physical limitations.

---

[1] An IDHW report indicated appellant failed to attend court hearings in the case and was reported as a missing person in California.

IDHW indicated that appellant's main support, T.H., was "abrupt, rushed, irritable, and lacking nurture towards [appellant and C.R.]." IDHW was also concerned about T.H.'s interactions with C.R., stating:

> "The Department has also observed a lack of hygiene when around [C.R.]. [T.H.] was observed picking at her skin, had a bloody nose and did not use hand sanitizer or wash her hands before handling [C.R.]. [T.H.] has also been observed cleaning her fingernails with a lottery ticket, in addition to wiping [C.R.] during a diaper change and using that same wipe to clean [C.R.'s] belly button. [T.H.] often has a cough and has been offered a mask due to the fact that [C.R.] is so little and will not be receiving any vaccinations, making [C.R.] extremely vulnerable."

As noted above, the case was transferred from Idaho to Merced County Superior Court in California in the fall of 2024.

A report filed by the Merced County Human Services Agency (MCHSA) in October 2024 indicated that, according to IDHW, appellant had fled Idaho and her whereabouts were unknown. MCHSA indicated appellant was aware that she needed to maintain contact, but had "willingly chosen" not to be in contact with MCHSA.

T.H. told a social worker that appellant had left Idaho on September 14, 2024, and was seen packing her belongings with the assistance of an unknown man.

The Merced County Superior Court held a hearing on October 16, 2024, wherein it accepted transfer of the case, and found that returning C.R. to appellant's custody would create a substantial risk of detriment. The court also ordered that family reunification services continue, and directed that weekly visits occur.

Appellant appeared telephonically for a court hearing on December 4, 2024. The court continued the hearing to allow appellant's counsel time to review the MCHSA report with her. Appellant again appeared telephonically on December 18, 2024, and again the hearing was continued.

Eventually, the court terminated appellant's reunification services at a hearing on February 4, 2025, due to her failure to contact and visit C.R. (Welf. Code, § 361.5,

subd. (a)(2)(B).)[2]  The court also found that appellant had not participated in her case plan and ordered that a section 366.26 hearing be set.

In March 2025, the MCHSA filed a request to serve appellant via her attorney since her whereabouts were unknown pursuant to section 294, subdivision (f)(7)(A).  The court granted the request.

On July 8, 2025, the MCHSA filed a report recommending termination of appellant's parental rights and setting a permanent plan of adoption.  The report described the history of parent-child contact as follows:

> "From September 2024 to February 2025, the Agency has been unable to schedule visitation between the minor and the mother as her whereabouts are unknown and she has not made herself available to the Agency to schedule visitation.

> "On March 4, 2025, [appellant] reached out to the assigned social worker requesting visits.  [Appellant] was able to have monthly one hour zoom visit[s] for the month[s] of March 20, 2025, April 17, 2025, May 15, 2025, and June 19, 2025."

> The report then summarized the results of the zoom visits:

> "Overall, the minor does not have any secure, emotional, and positive bond with the mother.  During the visits, the minor continued to play with the toys and not [look] at the mother.  The mother carried adult conversations with the minor as if she was an adult.  Due to the minor's age, the minor does not understand what the mother is saying."

> In contrast, the report noted that C.R. had developed "a secure attachment bond"

with L.R., her grandmother and prospective adoptive parent.

***August 6, 2025 Hearing***

At a hearing on August 6, 2025, the court issued the following verbal order: "[The] Court orders the child to remain as a dependent of the Juvenile Court and the permanency plan ordered is adoption.  The Court orders that all previous orders not in

---

[2]      All further statutory references are to the Welfare and Institutions Code.

conflict with today's orders remain in full force and effect." Counsel for MCHSA then said they needed to set a section 366.3 hearing. With the help of the court clerk, that hearing was scheduled for January 26, 2026. The clerk then asked when the "[section 366].26" hearing would be set, to which appellant's counsel replied, "Today was the –" before being interrupted by MCHSA counsel saying, "Today was the [section 366].26." The court then asked, "Before we leave this case, did I terminate parental rights on this case?" Counsel for MCHSA replied, "Yes, Your honor."

The minute order for the August 6, 2025 hearing directed MCHSA to submit an ex parte order after hearing for the court to sign and file. The minute order also stated, "The mother's rights are terminated," and later stated, "Parental Rights Terminated."

On August 21, 2025, the court filed an order on JV-320 pursuant to the August 6, 2025 hearing. The order expressly terminated appellant's parental rights and set adoption as the permanent plan.

## DISCUSSION

Appellant contends the court's *oral* orders were insufficient to terminate parental rights. (Italics added.) She observes that while the court stated on the record that the permanent plan of adoption was ordered, it did not state that her parental rights were terminated. The parties debate whether courts must state orally on the record that parental rights are terminated or whether a written order is an appropriate substitute. (See § 366.26, subd. (b) & (b)(1) ["*At the hearing, … the court … shall review the report as specified in Section 361.5, 366.21, 366.22, or 366.25, shall indicate that the court has read and considered it, shall receive other evidence that the parties may present, and then shall make findings and orders in the following order of preference*: [¶] (1) Terminate the rights of the parent …." (italics added)].) We do not reach that issue because even if the court erred, we find it harmless.

Even where the failure to state required findings on the record is erroneous, such a failure is harmless if it is not reasonably probable a different outcome would have

6.

obtained absent the error. (See, e.g., *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218; *In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137, disapproved on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6.) Here, while the court did not verbally say mother's parental rights were terminated, it did order them terminated in a written order.

First, the minute order for the hearing dated August 6, 2025, stated, "The Court makes the following orders: [¶] The mother's rights are terminated." Later, the minute order also stated, "Parental Rights Terminated."[3] Thereafter, the court issued a formal written order on form JV-320. The written order expressly and clearly stated that appellant's parental rights "are terminated."

Any potential prejudice was also mitigated by the fact that the court asked on the record: "Before we leave this case, did I terminate parental rights on this case?" Counsel for MCHSA replied, "Yes, Your honor." If, somehow, appellant's counsel had been previously unaware that the setting of a permanent plan of adoption at a section 366.26 hearing necessarily entailed termination of parental rights, this exchange would have alerted him of the fact. Yet, appellant's counsel registered no objection and expressed no surprise.

Given this exchange and the court's subsequent written orders, we discern no prejudice from the fact that the termination of parental rights was ordered in writing rather than verbally.

***Failure to State Court Reviewed Reports***

Appellant also notes that the court failed to state on the record that it had reviewed certain reports as required by California Rules of Court, rule 5.725(d). On this point, the error is clear because that rule requires that the court "state on the record" that it has read

---

**3**      Accordingly, appellant is incorrect when she asserts, "The minute order does not state that the [parents'] parental rights were terminated."

and considered the report of "petitioner, the report of any CASA volunteer, the case plan submitted for this hearing, any report submitted by the child's caregiver under section 366.21[, subdivision] (d), and any other evidence …."  (Cal. Rules of Court, rule 5.725(d); see also § 366.26, subd. (b) ["*At the hearing,* … the court … shall review the report as specified in Section 361.5, 366.21, 366.22, or 366.25, *shall indicate that the court has read and considered it* …." (italics added)].)  The court did not state as much on the record.

However, this error is also harmless.  The minute order said the court had "read and considered the Report filed with the court."  The formal written order further stated that "[t]he court has read and considered the assessment prepared under … §§ 361.5(g), 366.21(i), 366.22(c), 366.25(b), or 727.31(b) and the report and recommendation of the" social worker "and other evidence."  Again, we see no prejudice from the fact that the court communicated its consideration of reports and other evidence via written order rather than verbal statement on the record.

### DISPOSITION

The juvenile court's order terminating appellant's parental rights is affirmed.