Filed 9/10/20  In re Matthew P.  CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MATTHEW P., et al., Persons Coming Under Juvenile Court Law. | B298103 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.P., et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. 18CCJP08047A and 18CCJP08047B) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emma Castro, Referee.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant A.P.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant D.P.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother and father appeal from the juvenile court's dispositional order removing their 14-year-old son and 7-year-old daughter from parental custody. Father argues that evidence he sexually abused several other children and had involved father's older son in the abuse was insufficient to show that his younger children were at risk of abuse. During the pendency of the appeal, the children were returned to mother's custody, and the Department of Children and Family Services (Department) argued her challenge to the removal order was now moot. We agree and dismiss her appeal. We affirm as to father.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and father have three children: an 18-year-old son (older son), and the two children at issue in this petition, younger son and daughter. In December 2018, the Department received a referral alleging the police were investigating father for sexually abusing children at the daycare he and mother ran. A two-year-old girl who attended the daycare told law enforcement that father had touched her vagina and it hurt. The child's grandmother told the Department that the two year old had returned multiple times from daycare with her vagina inflamed. An investigation of the daycare found an immediate risk to the safety of the children there; mother's license to provide daycare was suspended.

When a social worker interviewed daughter, daughter said she believed father had sexually abused the two-year-old girl at the family daycare. Daughter said she had seen mother standing by the door of a bedroom while father and the two-year-old girl were inside. Daughter heard screaming and crying coming from inside the room. Father then came out of the door with a diaper in his hand and gave it to mother who threw it away. Daughter

2

did not know why father had changed the child's diaper in a bedroom, as the children's diapers were usually changed in the daycare room. Daughter said the child's unusual, high-pitched screams made her think father was sexually abusing the child. The social worker found daughter's statements alarming "as normally a 7 year old would not assume a sexual relationship between her father and a minor unless she has been exposed to it."

The Department filed a petition alleging younger son and daughter were at risk of serious physical harm and sexual abuse under Welfare and Institutions code section 300, subdivisions (b) and (d) as a result of father's sexual abuse of other children.[1]

The juvenile court ordered younger son and daughter detained from parental custody, and they were placed in the home of a non-related extended family member. The caregiver reported that the children exhibited sexualized behavior. When the children wrestled they positioned themselves in a sexual position, and younger son inappropriately touched daughter's groin. The caregiver also witnessed daughter engage in a "sexually explicit" "stretching routine" she said father taught her. Lastly, the caregiver once saw daughter with her pants pulled down, coming out of the bathroom where younger son was, and younger son then refused to open the door or explain what they had been doing.

At the jurisdiction hearing, two of father's relatives testified that father had sexually abused them as children. Father's niece testified that father had molested her four times when she was six or seven years old. In 2007, father had put his

---

[1]     All further statutory references are to the Welfare and Institutions Code.

penis on her vagina when she was naked, and had taken photos. On another occasion, father had showed her and older son pornography, and then asked them to touch each other while watching the video.

Father's cousin testified that father had sexually abused her when she was between seven and ten years old on multiple occasions. She had slept over at father's house, and he had rubbed her vaginal area while she was in bed between him and mother. On one occasion, during a party, he raped her in the garage. Mother walked in during the rape and asked father what he was doing. Father then stopped the assault. The cousin had first reported this abuse in 2004 or 2005 to a counselor.

Daughter testified that, on multiple occasions, she had seen mother and father naked in their bedroom having sex. According to younger son's testimony, daughter's bedroom was her parents' "walk in closet space" and there was no door separating her room from her parents' bedroom. Father denied that the reason daughter was in the adjacent room was for him to watch her without her clothing on.

Father denied the allegations of sexual abuse. The juvenile court found father not credible, and his niece and cousin "credible, compelling, and forthright. . . . They were both reliable, unbiased, honest witnesses who had no reason to fabricate allegations against" the parents. The court found "father's behavior to be aberrant in the extreme, sexually preying on young female children, and including [older son] in this egregious sexual conduct." The court sustained the petition, finding that younger son and daughter were at substantial risk of serious physical harm. The court removed the children from

4

parental custody, and ordered reunification services. Father and mother timely appealed.

## DISCUSSION

### 1. Mother's Appeal

Mother appealed from the court's removal order, arguing there was no substantial evidence the children would be at risk of harm in her custody, and there were reasonable alternatives short of removal. While her appeal was pending, the juvenile court returned the children to mother's custody.[2] The Department argues that in light of the return of mother's children to her care, her appeal is moot. Mother did not file a reply or raise any opposition to this argument. We agree with the Department and dismiss mother's appeal as moot. (See *In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315–1316.)

### 2. Substantial Evidence Supports the Removal Order As to Father

Father contends the juvenile court erred in removing his younger children from his custody because there was no evidence they had been abused or neglected, and reasonable means to protect the children short of removal existed. We disagree.

Under section 361, subdivision (c)(1), a juvenile court may remove a dependent child from a parent's custody when it finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

---

[2] We hereby grant the Department's request for judicial notice of the juvenile court's October 9, 2019 order.

5

Stated otherwise, the juvenile court may remove the child from her parent only if it finds, by clear and convincing evidence, (1) a "substantial danger" to the child's well-being if he or she were returned home, and (2) "no reasonable means" short of removal to protect the child. We review the juvenile court's findings underlying its removal orders for substantial evidence. (*In re M.M.* (2015) 240 Cal.App.4th 703, 719–720.) When "presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

" 'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citations.]' " (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.)

Here, the juvenile court found that father had molested multiple young children, and had involved older son in "egregious sexual conduct." In making this finding, the court deemed father not credible, and the victims who testified, credible. There was also circumstantial evidence father's abusive behavior had continued until recently, as a two-year-old at the parents' daycare told law enforcement father had touched her vagina.

Father contends that his niece's and cousin's sexual abuse allegations were "uncorroborated and unsubstantiated." This argument suggests that a victim must provide some evidence beyond their own testimony in order to substantiate a claim of sexual abuse. That is not the law. The testimony of a single witness is sufficient to substantiate their allegations of abuse. (See *In re Sheila B.* (1993) 19 Cal.App.4th 187, 200 ["The testimony of a single witness is sufficient to uphold a judgment [citation], and an appellate court may not evaluate that testimony as a basis for reversal."]; *People v. Jones* (2013) 57 Cal.4th 899, 963 [" 'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction' "].) Here, the juvenile court found father's niece and cousin credible, and father not truthful. This finding was sufficient to substantiate their claims of sexual abuse.

There was also evidence younger son and daughter had been exposed to inappropriate sexual behavior in the family home. Daughter testified about seeing her parents having sex on multiple occasions, and younger brother testified there was no door between daughter's bedroom and their parents' bedroom. The children's caregiver witnessed younger son and daughter engaging in inappropriate sexualized behavior. There was also evidence father had sexually abused a child at the daycare in the family home while daughter was at home.

The combined events of father's egregious sexual abuse of multiple children, his involvement of one of his own children in a child's abuse, and his children's exposure to inappropriate sexual behavior provided substantial evidence supporting the court's finding that father's younger children were at risk of harm if not

7

removed from his custody. (See *In re I.J.* (2013) 56 Cal.4th 766, 778 [" 'It is of course impossible to say what any particular sexual predator . . . is likely to do in the future in any particular instance. But in our view that very uncertainty makes it virtually incumbent upon the juvenile court to take jurisdiction' " over the predator's children].)

Father contends safe alternatives to removal existed, such as allowing the children to return to father's care under stringent conditions of supervision or conditioned upon his participation in sexual abuse and mental health counseling. However, visits by the Department would not protect the children from father when he was unsupervised. Mother, for instance, could not be relied on to protect the children from him: the court found that mother was complicit in father's abusive behavior, and was not a credible witness.[3] It was not unreasonable for the juvenile court to conclude that, after years of abusing children, father would not immediately reform simply upon starting treatment for sexual abusers or participating in counseling.

Father analogizes this case to *In re Hailey T.* (2012) 212 Cal.App.4th 139, *In re Ashly F.* (2014) 225 Cal.App.4th 803, and *In re A.E.* (2014) 228 Cal.App.4th 820—in each of these cases, the appellate court reversed the juvenile court's removal order. Those cases are readily distinguishable. In *In re Hailey T.*, a four-year-old child was removed based on a head injury inflicted on her infant brother by an unknown perpetrator. (*In re*

_____

[3]     As referenced above, while mother's appeal was pending, the juvenile court returned the children to her custody. That the court later found mother was capable of protecting the children does not mean this was a safe alternative at the time of disposition.

*Hailey T.*, pp. 142–144.)  The Court of Appeal reversed the removal of the four-year-old, and concluded the child would be able to articulate any abuse, and there was "abundant evidence" the parents were good parents.  (*Id.* at p. 147.)  Here, by contrast, the juvenile court found abundant evidence that father was the perpetrator of severe sexual abuse, and that mother did not take action to protect his child victims.

In both *In re Ashly F.* and *In re A.E.*, the Court of Appeal reversed a removal order in part due to an abusive parent's acknowledgment of abuse and expression of remorse, and evidence that the other parent was committed to protecting the children from abuse.  (*Ashly F.*, *supra*, 225 Cal.App.4th at pp. 806–808; *A.E.*, *supra*, 228 Cal.App.4th at p. 826.)  Here, by contrast, father took no responsibility for the abuse, and the court found mother could not be relied on to protect the children.

Lastly, father argues the juvenile court did not state sufficient facts to support its removal finding.  (See § 361, subd. (e) [the "court shall state the facts on which the decision to remove the minor is based"].)  We conclude any error was harmless.  (See *In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137 ["[a]lthough the court did not state a factual basis for its removal order, any error is harmless because it is not reasonably probable such findings, if made, would have been in favor of continued parental custody"].)

The court found that niece's and cousin's "sworn testimony confirmed a history of multiple incidents of sexual abuse at the hands of [father] when they were children."  The court further found that mother had witnessed husband's sexual assault of cousin, and father had urged niece and older son to reenact pornography.  The court concluded that "father's behavior [was]

9

aberrant in the extreme, sexually preying on young female children, and including his young son in this egregious sexual conduct. . . . [The] weight of the evidence presented . . . leaves no room for a judicial determination, other than the petitioner has met its burden of proof, establishing that both [daughter and younger son] are at substantial risk of harm of sexual abuse by father, and mother's failure to protect the children from father's sexually aberrant behavior." Given these factual findings of father's unresolved history of child sexual abuse, there is no reasonable probability the children would have remained in his custody had the court expressly made findings as to the factual basis for its removal order.

## DISPOSITION

The judgment is affirmed.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


KIM, J.